(Reap. Dec. 8229)

Page N. Goffigon for Account of Charles R. Allen
v. United States

Entry No. W-190, etc.

(Decided May 27, 1953)

John F. Kavanagh for the plaintiff.

Charles J. Wagner, Acting Assistant Attorney General (Alfred A. Taylor, Jr., and Arthur R. Martoccia, special attorneys), for the defendant.

Ford, Judge: The three appeals listed in schedule "A," hereto attached and made a part hereof, were consolidated for the purpose of trial and decision. The merchandise consists of grated coconut in sirup which was exported from Havana, Cuba, and entered at the port of West Palm Beach, Fla.

The merchandise covered by appeal No. 165930–A was invoiced as "1000 cartons, 48/13 oz. Grated Coconut in Light Syrup, 'Ferro' Brand; 53% coconut, 47% refined cane sugar." This merchandise was entered at $7.90 per case, net, and was appraised at $8.40 per case, net, packed. This appeal also covers "1000 cartons, 6/#10's Grated Coconut in Light Syrup, 53% coconut, 47% refined cane sugar, 'Ferro' Brand," which was entered at $7.50 per case, net, and was appraised at $8 per case, net, packed.

Appeal No. 165931–A covers merchandise invoiced as "650 cs. 48/13 oz. cans Grated Coconut in Light Syrup, 'Ferro' Brand; 47% refined sugar, 53% grated coconut," which was entered at $7.90 per case, net, and was appraised at $8.40 per case, net, packed. This appeal also covers merchandise invoiced as "650 cs. 6/#10's Grated Coconut in Light Syrup 'Ferro' Brand, 47% refined sugar, 53% grated coconut." This merchandise was entered at $7.50 per case, net, and was appraised at $8 per case, net, packed.

The merchandise covered by appeal No. 174017–A was invoiced as "2500 Cs. 48/#1–13 oz. net cans GRATED COCONUT IN SYRUP

'FERRO BRAND' CONT. NOT OVER 16⅔% SUGAR," which was entered at $7 per case, net, and was appraised at $9.25 per case, net, packed.

At the trial of this case, it was agreed between counsel that there was no foreign market value for this merchandise and that export value was the proper basis for finding a value for this merchandise. It is stated in exhibit 1 that Havana, Cuba, is the principal market for the sale of this merchandise, and this statement stands without contradiction. I therefore find that export value is the proper basis upon which to find a value for the involved merchandise and that Havana, Cuba, was a principal market for the sale of such or similar merchandise.

Exhibit 1, admitted in evidence at the trial of this case, is an affidavit executed by Sixto Ferro, properly executed and acknowledged before the American consul at Havana, Cuba, on March 26, 1952. In this affidavit, the affiant states that he is the business manager of the exporter herein, having occupied that position since 1944; that the bookkeepers, clerks, and typists of this concern are under his supervision; that the orders for merchandise produced by the exporter, the shipment of the same, and the payments therefor all come under his supervision; that he assists in fixing the selling prices and in passing upon commercial credits; that said firm was the principal exporter of canned coconut during the period involved herein. Affiant states further that:

So far as sales for export are concerned, I showed Mr. Allen my Official Inventory Book for 1944–48 inclusive. This book is kept under my supervision (duly Notarized) for the information of the Cuban Treasury Tax Officials, who consult same periodically or at their pleasure.

I showed Mr. Allen in said book at page 22 thereof that under date of December 31st, 1946, my Inventory of canned coconut for export No. 1 size was 6,679 cases— 16⅔% sugar contents, which I entered in said book at $5.00 a case and said coconut was identical to what I was shipping to the United States.

I made repeated efforts during December 1946, January 1947, and February 1947, to sell these last mentioned 6679 cases of canned coconut to my export trade in the United States at $6.50 per case for the number one size, but did not get an acceptance at that or any higher or lower price until Rico Products, Inc. of Tampa, Fla. purchased 150 cases of that lot at $6.50 a case, which I shipped to them on March 28, 1947, on an order received by me from them on or about March 15, 1947.

That the bottom had dropped out of the Market for this merchandise and my organization made no further canning of this coconut with such a low percentage of sugar.

That the prices which I referred to above, as the export value, was the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise was freely offered for sale by us to all purchasers in the principal market for this merchandise which was Havana, Cuba, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States and such price included the cost of all containers

and coverings of whatever nature and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It will be noted that affiant stated that he made repeated efforts to sell canned coconut "to my export trade in the United States at $6.50 per case for the number one size, * * *." There is nothing in this record to show that the exporter's export trade in the United States included *all purchasers* who might care to buy this merchandise. Later in the affidavit, in stating the price "at which such or similar merchandise was freely offered for sale," affiant limited his statement to sales "by us." There is no evidence before me to show that other exporters were not freely offering such or similar merchandise to *all purchasers* in the principal market, in the usual wholesale quantity and in the ordinary course of trade, at prices higher than those stated by affiant.

Furthermore, the statement in this affidavit as to usual wholesale quantities does not meet the requirement of the rule concerning the kind of proof necessary to establish the usual wholesale quantity laid down by the Court of Customs and Patent Appeals in *Brooks Paper Co.* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, as shown by the following:

> Under this test of substantial evidence we think it clear that a mere declaration of an essential ultimate fact in issue is not substantial evidence. As noted above, ultimate facts are to be deduced from evidentiary facts by inference, *Hickey* and *Revenue* cases, *supra*, and are the issuable facts which a complainant must prove to prevail, *Steel Vault* case, *supra*. This being the case, it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred. We believe these distinctions are implicitly recognized in the case of *National Labor Relations Board* v. *Hudson Motor Car Co.*, 128 F. (2d) 528, wherein the Circuit Court of Appeals of the Sixth Circuit discussed the interrelationship between "substantial evidence," "ultimate facts," and "primary" or "evidentiary" facts.

> In view of the foregoing discussion, it seems to us an inescapable conclusion that affiant's statements pertaining to the question of usual wholesale quantities are merely statements of a vital issuable fact and hence only a declaration of an essential ultimate fact. Being such, we think that under the test laid down by the Supreme Court in the *Columbian Company* case, *supra*, such statements cannot properly be regarded as substantial evidence.

> \* \* \* \* \* \* \*

> In item 5 of the affidavit, *supra*, affiant states that any purchaser could receive the discount given to a wholesaler upon the purchase of 15,000 square meters or more of matrix board. We think it clear that this statement does not in any way help to establish what the usual wholesale quantity is, but merely serves to indicate what the *price* is for this particular wholesale quantity. Although the goods are offered to all at the wholesale discount when purchased in that particular wholesale quantity, it does not logically follow that this quantity must *necessarily* be the *usual* wholesale quantity. \* \* \*

·Exhibits 2 and 3 are letters of credit furnished by the plaintiff herein, Charles R. Allen, for the purchase of the involved merchandise. One letter is dated May 9, 1945, and the other is dated April 3, 1946. Exhibits 4 and 5 are bills of lading covering the involved merchandise.

Exhibits A, B, and C are special agent's reports offered by counsel for defendant. Exhibit D is the original inward foreign manifest of the SS. *Caracas*. Exhibit E is the certificate of dispatch, issued by the Cuban officials to the SS. *Caracas* and exhibit F is the "Master's Oath on Preliminary Entry of Vessel from Foreign Port."

In addition to the documentary evidence, Charles R. Allen testified in effect that he purchased the merchandise covered by these appeals; that the prices shown on the invoices are the prices actually paid therefor; and that he did not receive any refunds or discounts of any kind from the exporter.

Robert E. Lund testified for the plaintiff that he was the customhouse broker who made entry of the involved merchandise, and that the bills of lading were in his possession and were used by him in making entry and fixing the date of exportation as October 5, 1945, with respect to entry Nos. W-190 and W-191. George G. Dougan testified for the defendant regarding his duties as a customs inspector at West Palm Beach, Fla., and as to how he handled the shipping papers covering the involved merchandise. Considerable time was spent in an effort to establish the exact date of exportation of this merchandise. It is made clear that the merchandise covered by appeal Nos. 165930-A and 165931-A was exported on October 5, 1945. The date of exportation of the merchandise covered by appeal No. 174017-A is not made clear by this record. It was entered on August 18, 1947, using a *pro forma* invoice, at the top of which appears the following:

EXTRACT OF CONSULAR INVOICE #14766, DATED AT HAVANA, CUBA DECEMBER 13th, 1946.

In view of the state of this record, the exact date of exportation of any of the merchandise would not appear to be controlling in this case. The evidence in this record is totally insufficient to establish any quantity as ·a wholesale quantity; neither does the evidence establish any quantity in which the merchandise is sold to wholesalers or to retailers for resale. I am therefore unable to find what quantity constitutes a usual wholesale quantity. Under the statute here controlling, the value of the involved merchandise is made to depend upon the price at which such or similar merchandise is sold or freely offered for sale in the usual wholesale quantity. Therefore, since I am not able to find from the evidence before me what quantity constitutes the usual wholesale quantity, I am not able to find any value for this merchandise other than that found by the appraiser.

The statute makes the value found by the appraiser presumptively correct and places upon the party who challenges the correctness

of that value the onus of proving the incorrectness thereof. Nor is this all. The Court of Customs and Patent Appeals has held that "* * * the party appealing for reappraisement was required to go further and establish the correct dutiable value of the merchandise in order to prevail." In this connection, the following is quoted from *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. (Customs) 36, C. A. D. 246:

> In the case of *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, 52, T. D. 48332, this court held that, in the event the presumption of correctness attending the appraiser's appraisement was overcome, the party appealing for reappraisement was required to go further and establish the correct dutiable value of the merchandise in order to prevail. In so holding, the court cited the case of *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276.

In the case of *United States* v. *Manahan Chemical Co., Inc.*, supra, this court said:

> Appellant's counsel contend that the prices stated in the invoices constitute substantial evidence as to the dutiable value of the merchandise. It is true that an invoice, under certain circumstances, may be considered in the appraisal of merchandise, but an invoice cannot of itself establish statutory elements necessary to constitute foreign or export value of merchandise.

> In the case of *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, we said:

>> The court below is quite right in the statement that as a matter of law a single sale might establish an export value. But, in order to do so, *it must appear from proof* that such a sale accords with a free offering at that price—

>>> to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States * * *.

> There is nothing in the invoices or other papers constituting a part of the record indicating that the prices named in the invoices were the prices at which the merchandise was offered to all purchasers in the principal markets of Germany, either for home consumption in that country or for export to countries other than the United States. In other words, there is nothing in the record to indicate that the prices named in the invoices accord with a free offering of such or similar merchandise in the principal markets of Germany in the usual wholesale quantities and in the usual course of trade.

In *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D. 48332, the Court of Customs and Patent Appeals emphasized the dual burden which must be assumed by an appellant in a reappraisement case in the following language:

> In the instant case the material finding before us is negative in character. The appellate division weighed the testimony and reached the conclusion, in effect, that appellant had failed to sustain the burden which the statute imposes of overcoming the presumption of correctness of the local appraiser's valuation. It may be remarked here that this is but one part of the burden which rests upon a party appealing to reappraisement as frequently we have had occasion to point out. Had such presumption been overcome in this case, importer would have had to go further and himself prove the correct dutiable value in order to prevail. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276, and cases there cited.

Affiant states in exhibit 1 that he made repeated efforts during December 1946 and January and February 1947 to sell 6,679 cases of canned coconut to his export trade in the United States at the price of $6.50 per case, but was unable to make a sale at this price until March 28, 1947. Accepting this statement as a fact, there is no evidence before me to show that other exporters were not freely offering and selling this same coconut, within the requirements of the statute, at prices equivalent to those found by the appraiser as the value of this merchandise. As stated by the Court of Customs and Patent Appeals, *supra*, "The courts may not properly supply from imagination the essentials in which the proofs are deficient." *United States* v. *Malhame & Co., supra.*

The weight of the evidence in this case is not sufficient to overcome the presumption of correctness in favor of the values for this merchandise found by the appraiser, or to establish any other value for the merchandise. Under these circumstances, I have no other course left open to me except to affirm the appraised values in each instance. I therefore find the appraised values to be the proper dutiable values in each of the appeals here involved. Judgment will be rendered accordingly.