(C. D. 1725)

CHARLES R. ALLEN *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 23, 1955)

Petitioner not represented by counsel.
*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett* and *Daniel I. Auster*, trial attorneys), for the respondent.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a petition, filed under section 489 of the Tariff Act of 1930, for the remission of additional duties assessed because of the undervaluation of three shipments of grated coconut in sirup, exported from Cuba and entered at the port of West Palm Beach. The merchandise was packed in cases of forty-eight #1 13-ounce cans (referred to as 48/1's or 48/13's) and in cases of six #10 cans (referred to as 6/10's). It was entered and appraised as follows:

| Entry No. | Date exported | Size | Entered value (per case) | Appraised value (per case) |
|---|---|---|---|---|
| 190 | 10/5/45 | 48/1's | $7. 90 | $8. 40 |
| | | 6/10's | 7. 50 | 8. 00 |
| 191 | 10/5/45 | 48/1's | 7. 90 | 8. 40 |
| | | 6/10's | 7. 50 | 8. 00 |
| 166 | 12/5/46 | 48/1's | 7. 00 | 9. 25 |

Appeals for reappraisement were filed, and the appraised values were affirmed. *Page N. Coffigon for Account of Charles R. Allen* v. *United States*, 30 Cust. Ct. 563, Reap. Dec. 8229, application for review dismissed, 32 Cust. Ct. 671, A. R. D. 42.

At the trial herein, petitioner appeared in person and testified as follows: During the war, his company, of which he is managing partner, imported coconut in sirup from Cuba. Such merchandise was made to order for future delivery and was purchased from several shippers in Havana. The contracts were signed by the firm's Cuban agent and were confirmed at Charleston by the witness and irrevocable letters of credit opened.

The merchandise involved in entries 190 and 191 was contracted for on May 9, 1945, at which time letter of credit No. 89564 was established, covering (so far as here material) 48/1's at $7.90 per case and 6/10's at $7.50 per case, less 1 per centum (petitioner's collective exhibit 1). Said merchandise was shipped, according to the official papers, on October 5, 1945. Allen stated that he sent to the customs broker in West Palm Beach the shipper's invoice, the consular invoice, and a statement that the Cuban agent had verified that the invoice prices were the market values at the time of shipment. He stated further that his experience with Cuban sellers during the war had been that, when a commodity advanced in price before shipment, the seller or manufacturer would demand that the price be renegotiated to take care of the advanced cost; therefore, he felt that the shipper's invoice value represented the real value of the merchandise at the time and place of shipment.

The witness testified that entry 166 included 100 cases, out of a shipment of 2,500 cases, which were paid for under letter of credit No. 92302, dated April 3, 1946, covering (so far as here material) 48/1's at $8.25 per case, less ½ per centum (petitioner's collective exhibit 1). According to Allen, the contract of purchase was entered into a day or two prior to that, but the *pro forma* invoice gives the date of acceptance of the order as November 6, 1946. Allen stated that thereafter the shipper required that the contract be amended, raising the price to $8.70 per case, and the letter of credit was so amended. However, by November 1946, the importer realized there was little chance of selling this commodity in the United States, due to the removal of sugar restrictions or rumors to that effect. The firm tried unsuccessfully to make sales in Havana and then tried to negotiate a settlement with the seller, the result of which was that the price of the unshipped portion was reduced to $8.25 per case. The merchandise was sent to this country in December 1946 but was not entered until August 18, 1947. The witness forwarded to the broker the consular invoice and the shipper's invoice showing the cost to be $8.25 per case but instructed him to enter the merchandise at $7

per case. He said that the deduction of $1.25 to make the claimed market value was not arbitrary, but was his interpretation of the value at the time and place of shipment. He added that he found subsequently that the manufacturer carried the merchandise on his books at $5 a case and that it was finally sold at an average price of $6.50 per case, duty paid.

Two additional letters of credit were offered in evidence at the trial, No. 88704, dated February 7, 1945, and No. 90799, dated October 2, 1945 (petitioner's collective exhibit 2). The latter covered 2,000 cases of 48/13's at $7.90; 3,000 cases of 48/13's at $8.40; and 3,000 cases of 6/10's at $8. Allen stated that, when entries 190 and 191 were filed, he did not instruct the customs broker to inform the appraiser of the said contract at increased prices on the ground that said prices had no bearing on those entries and were for subsequent shipments. He stated in explanation that, prior to October 9, there had been no changes in the market value; that the greatest demand for coconut came in November and December; therefore, the prices for shipment in November and December were higher.

Allen testified also that, prior to the hearing in the reappraisement proceeding, he went to Havana to determine the values of the merchandise at the time and place of shipment but was unable to obtain certain records at the American Embassy because it was the custom to keep records for only 2 years.

Respondent called James A. May, senior examiner and assistant appraiser of merchandise for the district of Florida since 1944, who testified that the entries herein were appraised under his supervision. He stated that, at and prior to October 1945, no information was furnished him by the importer or his broker with respect to the market values of the merchandise; he was shown no contracts of purchase or letters of credit or correspondence and had only the invoices as a basis of information. An official investigation of the market value was requested by appraising officers on October 12, 1945, because of varying discounts on different shipments. Such an investigation was conducted in Cuba, but, because of lack of cooperation from the manufacturer, no information as to market value was obtained until a report was made on January 31, 1947.

May stated that the customs broker herein filed requests for information as to value when the entries were made, and he, May, replied that the appraiser had no information and suggested that the importer secure it from the manufacturer or shipper. However, the importer did not give the appraising officials any information.

According to May, the reports of the official investigation showed that the market went up in October 1945 and that the importer herein had received a discount of 6 per centum, although the normal discount was 1 per centum. May also stated that, at the time entry 166 was

filed, no information was furnished by the importer or his broker to explain the deduction of $1.25 to make market value. Said entry was subsequently appraised on the basis of the price paid by another importer.

During the course of the trial, the record in the reappraisement proceedings involving these entries was offered and received in evidence. In that case, Allen testified that the invoice prices represented the prices stipulated in the letter of credit, regardless of whether the market went up or down. The broker testified that he received his values from Allen over the telephone and that he had no other information about the values at the time of entry. Subsequently, about 2 years later, he was advised of the values at which the appraiser intended to appraise the merchandise and was given an opportunity to amend the entries.

In remission cases, the petitioner has the burden of showing affirmatively that entry was made without intent to defraud the revenue, or to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise. *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507. He must show that he was acting in entire good faith; that no facts or circumstances were known to him which would cause a prudent or reasonable person to question the correctness of the values given by him; and that a full disclosure was made to customs officials of all material facts within his knowledge or possession. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Intra-Mar Transport Corp., Formerly Gondrand Transport Corporation* v. *United States*, 42 C. C. P. A. (Customs) 94, C. A. D. 578. Petitioner is under a duty to inform himself as to the correctness of his representations as to value; a showing of indifference does not meet the requirements of the statute. *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70.

In the instant case, petitioner Allen relied upon the invoice values of the merchandise, on the ground that his firm's Cuban agent had advised him that the invoice values represented the market values and on the further ground that Cuban sellers demanded that contract prices be renegotiated when there was an advance in price before shipment. Apparently, Allen, himself, never made any investigation as to value, and, since the Cuban agent was not called upon to testify, there is no evidence as to what inquiries he made to ascertain the market value of the merchandise. There is no evidence that the broker made any inquiries except the filing of a so-called submission sheet. The submission sheet was returned with no information but with the suggestion that inquiry be made of the manufacturer or shipper. Under such circumstances, the petitioner is put on notice so as to require that he seek further information as to value before making entry. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A.

(Customs) 215, T. D. 49306; *A. N. Deringer, Inc.* v. *United States*, 42 C. C. P. A. (Customs) 28, C. A. D. 565. As far as the record herein shows, no such inquiry was made. Some time before the trial in reappraisement, petitioner attempted to obtain information from the American Embassy and now complains that, by that time, the records had been destroyed. He has offered no explanation as to why no investigation was made earlier. Petitioner was put on inquiry not only by the submission sheet but by the lapse of time between the dates of the orders and the dates of shipment. *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392.

Moreover, in the instant case, Allen knew prior to the date of entry of entries 190 and 191 that a contract of purchase at higher prices had been made, but that fact was not disclosed to customs officials. Petitioner is under a duty to disclose all material facts in his possession as to the value of the merchandise, including a rise in prices. *United States* v. *Balfour, Guthrie & Co., Ltd.*, 39 C. C. P. A. (Customs) 199, C. A. D. 487.

Petitioner has referred to the fact that these entries were not liquidated until after the enactment of the Customs Simplification Act of 1953 (67 Stat. 507), which deleted the provision of section 489 providing for the assessment of additional duties for undervaluation of merchandise. Congress did not intend by said legislation to provide relief for liabilities which had already accrued or as to pending matters. *A. N. Deringer, Inc.* v. *United States, supra.*

On the record presented, we hold that petitioner has failed to meet the burden of establishing that the entries were made without intent to defraud the revenue, or to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise. Accordingly, the petition is denied.